Good afternoon, Your Honor. May it please the Court, Robert Swain for Emilio Reyes-Bosque, the appellant in this case. Your Honors, this is a fairly narrow issue the Court is looking at today because we're merely saying that the District Court abused its discretion by failing to hold an evidentiary hearing directly contrary to 2255B and case law in this circuit, including Chacon. There should be no dispute by looking at the language of the Court's decision itself that the District Court merely took the declaration of the attorney over the declaration of the petitioner. It says right on page 5 of ER 6 that it's contrary that the self-serving allegations of the petitioner is contrary to the sworn affidavit of trial counsel. That should be sufficient in itself to show that a hearing was necessary. The government and the lower court relied on a single case of the Turner decision, which really isn't on point to this case because in that case you can look at the records of the case and see. First of all, there was no dispute that the... So this judge presided over your client's trial, correct? Correct. So the last case that we just heard was about this doctrine, falsus in unum, falsus in omnibus, which means if you're false in one thing, you're false in everything. And it's a doctrine our court has recognized. This case seems to be similar because this judge watched your client have a trial and maybe determined in the course of that trial that your client wasn't credible. Now your client has offered an affidavit. Why isn't this judge entitled to say, I have enough knowledge about this person that I believe that they lied to the court and I think this is another lie to the court and so I'm going to... There's no reason after hearing because I know that I'm going to believe counsel rather than believing this individual. Well, first, that wasn't anywhere in the lower court's decision, so there's no evidence whatsoever that it was based on that. But more importantly, there was no evidence that Mr. Rezboski lied or had any credibility determination made against him during the proceedings. Did he testify at trial? No, he remained silent at trial. At sentencing, he remained silent. So there's absolutely nothing in the record that the district court or the government could point to to say... What was the underlying crime and was there any evidence about his credibility in connection with that? No, the underlying crime was a conspiracy in various substantive counts of bringing in undocumented aliens to the country. And what made it such a severe case was the 1327 allegation, which is a strict liability if you bring in someone who's an aggravated felon. And so there was nothing... Were there any statements offered, any confession or anything in the prior case, in the underlying case? Not that I'm aware of. That was a fairly lengthy trial in that case. I know he did not take the stand. My recollection is that there was nothing along those lines. There was no fraud or any elements of the offense that a court would be able to look at and say that this was... I've already made a credibility determination in that regard. A related question. During sentencing, you said he remained silent during the sentencing proceeding. Does that include speaking with the probation officer in connection with the creation of the pre-sentence report? He gave background information. None of it, the probation report, was submitted to the court. The court has that. The probation officer, from my recollection, didn't say there was anything false in his personal background regarding the offense. He did not make any statements about the offense. Could I ask you one other question? I personally am with you on the concept that it was error for the district court to put the two declarations next to each other and deny an evidentiary hearing based on a conclusion that the prisoner's declaration is contradicted by the attorney's declaration. My concern, though, is does there really have to be... I mean, if we remanded, would there really have to be an evidentiary hearing? It seems to me that the government rightly raises a concern that there were some inconsistencies in Mr. Reyes-Bosky's presentation between his opening brief, his petition, and the papers he submitted on reply. And wouldn't it be appropriate on remand for the district court to reopen the record and give the government an opportunity to submit additional documentary evidence that might refute Reyes-Bosky's position? And in particular, I'm thinking about the fact that Reyes-Bosky said, you know, the offer that they didn't communicate to me was not accompanied by an agreement that I wouldn't have to testify against government agents. And the other offers they gave me did require me to testify against government agents. I would think that the government might be able to submit documentary evidence to refute that that would obviate the need for an evidentiary hearing in this case. Don't you think that would be appropriate to give the government a chance to do that if it wanted to? Under the facts of this case, I really don't see that as a possibility, because for the direct concern the court just mentioned, it is in the record that the other agreements required cooperation, at least as to the post-trial. That's in Sedell's declaration. He says that the government came to him post-trial and said, we can still... No, but what about the offer that Reyes-Bosky rejected before Sedell came along, for example? Well... Maybe the government could have that, maybe that offer was in writing, and maybe the government could submit it to show that, in fact, that didn't require cooperation. Well, I guess certainly the court could enlarge the record, but Mr. Bosky would have to have the right to respond to that. And I think that, you know, when the cases look at the need for an evidentiary hearing, the cases say that it's particularly necessary when it's discussing or considering facts outside the record, like communications with the attorney. Now, if there was some way that the government could posture the case so there was no material fact at issue, reasonably at issue, I guess theoretically... I would think that my example would be an example of that. I mean, if they said, look, here's the offer that we transmitted to him, and it did not say anything about requiring him to testify against government agents, then Reyes-Bosky's been caught in an out-and-out lie, and there would be no need for an evidentiary hearing. Well, if the prior counsel confirmed that, and if Mr. Bosky had the chance to respond and say, no, that wasn't communicated to me, that's simply more facts that have to be developed at an evidentiary hearing. The court's saying that as if the government transmits an offer to the attorney, that it's somehow automatically transmitted to the defendant, and that's exactly the case we have here where we're saying it wasn't communicated, and it wasn't communicated properly. And, you know, in terms of any inconsistencies in the record, I think the purpose for a hearing is exactly to determine the credibility, especially when you have someone who pledged his pro per, he's got a sixth-grade education in Mexico, he speaks no English, and as it's set forth, he's having someone else, another prisoner, help him draft the pleadings. If you had a hearing, would any of his family members testify? I believe so. I believe his brother and mother would testify about a number of factors, including whether an interpreter was used in order to communicate with the mother. Can I bring up one other point that, you know, preparing over the last couple of days, I saw that the government and the court wants to put so much weight in the Seidel Declaration, but when you look at the Seidel Declaration with the June 7th letter, you realize that the attorney didn't accurately convey the risks of going to trial because in the letter, the threat from the government is, look, you're going to be sentenced to offense level 23 that carries 135 months to 150-something. But in fact, he was sentenced at level 33, 10 levels higher. And so I think that's exactly the type of thing that can be developed on remand at an evidentiary hearing. Because if the attorney just read that letter, even accepting the attorney's declaration, he was giving incorrect information to the defendant about the risk of going to trial and knowing the maximum penalty, and the court has held... I'm sorry, I didn't finish your sentence. I was just going to say that the cases say that one of the fundamental requirements of defense counsel to be effective is to tell what the maximum penalty and the risk that you're facing after trial. Thank you. Do you want to save your remaining time? I have a few seconds, I guess. Good afternoon, Your Honors, and may it please the Court, Colin McDonald for the United States. District courts have the discretion in the habeas context to determine whether a hearing is appropriate. And it's particularly significant that they have this discretion in the habeas context for specifically this moment. And this was addressed in the Turner case, which speaks to the evidence that's necessary to support a habeas claim. And the Turner case there said that a defendant's self-serving statement was not enough. It was not enough. And what they said, if the rule were otherwise, every rejection of a plea offer viewed perhaps with more clarity in the light of an unfavorable verdict could be re-litigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer. I think the problem with your reliance on Turner is that the record in that case clearly, indisputably refuted Turner's allegation that he wasn't informed about the consequences of his plea. Right. And it may be that Mr. Reyes-Bosky's assertions seem kind of dubious, but I don't think you could say that about the record in this case, that there is documentary evidence that refutes his assertion that he wasn't advised about the consequences. Well, it's important to note that this is not merely his trial counsel's word against Reyes-Bosky's word. It's not just two competing declarations. And the district court noted this. What additional evidence is there? The district court specifically noted that it was undisputed that Reyes had rejected numerous prior offers. Right, but the issue is, what was he told the prior offers contained and what was he told this offer contained? So the fact that he rejected the other ones doesn't answer, I mean, it's sort of not relevant, right? Well, I think it's relevant to the prejudice prong. It's also relevant to the evidence. I mean, maybe it's relevant, but it's not very persuasive evidence. I mean, if he didn't know what the prior – if he had incorrect information about what all of the offers were, then the fact that he rejected them is neither here nor there, right? But there's no evidence that all the other pleas somehow were sort of misrepresented. And I think what the district court said is that, you know, look, we also have the fact that Reyes has the offer, the subject plea offer in his possession when he files his habeas. Right, but he could have gotten that later. He got his file in order – I mean, at some point he got his file, but that doesn't mean he had the plea at the time he had to make the decision. That's correct. But the point is that there are other evidences in the record that corroborates the trial attorney's affidavit. Yeah, but that particular evidence seems irrelevant. I mean, that is not probative at all of whether he had the plea agreement at the time. The fact that he had it in his file when he was preparing his habeas petition. I think that that may be – that's true. We don't know when he got it, but was the district court – did the district court abuse its discretion in light of the Turner case? Well, the Turner case – I mean, so the Turner case uses the word self-serving, but it was a self-serving declaration that contradicted things that we knew happened because he was in the courtroom when the things were happening, and then he says they didn't happen, basically. I mean, he knew that he was the subject of death penalty because he was sitting in the courtroom when they were talking about it. That's not the situation here. So, I mean, you're putting a lot of weight on self-serving, but Turner never said, from now on, any declaration that could be considered self-serving is not going to be considered, right? I mean, that's not what was really going on. There was evidence in the record that showed that the habeas petitioner's claim was false. Still, though, the principal in Turner speaks to the evidence that's required to be offered by a defendant, and a district court does not have to hold a hearing where the record conclusively establishes that the prisoner is not entitled to – And what in this record conclusively establishes that his current affidavit is false? That he was able to give no other evidence in support of it. That is one. Well, what kind of evidence would he have, other than just saying what happened? I think it would be similar to, like, the Chaconne case, which was the case that this court cited for purposes of the certificate of appealability. There, the defendant had claimed that his lawyer advised him to reject the plea, and the defendant was able to give two other affidavits to the court in addition to his own. But that's only because – sorry. But here he's saying the mother and the brother would come testify about what happened at the time, what the lawyer told him, maybe what the lawyer told them directly. We haven't had the hearing, so we don't know what the mother and brother are going to say. I don't think there's been any discussion previous to this point that says the mother and the brother and any family members have any information whatsoever about the plea negotiations. That's entirely new. It's in the brief. Is it not – well, I can ask him on rebuttal whether it's in the record. If they didn't have evidence about the plea negotiations, then how could he have submitted affidavits from them about the plea negotiations? What I'm saying is they very well might have. That's never been said before. But they're in this exact circumstance where the defendant is talking about the private plea negotiations. This court, there is precedent to demonstrate that there is possible evidence out there for the habeas petitioner to bring forth evidence beyond his self-serving statement. There's not one case in the entirety of case law where a habeas petitioner was able to proceed on his own self-serving word. The defense cites this Pham case. What about U.S. v. Howard? I mean, U.S. v. Howard was a case where the – as I recall it, the defendant said I was under the influence of narcotics and as a result of – there was no dispute that he was taking narcotics, that he was taking painkillers. But the defendant said I couldn't understand the plea colloquy because the narcotics really messed me up. And there was nobody else who was saying that he couldn't understand the plea colloquy because the narcotics really messed him up. It was only him. Isn't that an example of a situation where it's really only the word of the defendant that requires an evidentiary hearing? Respectfully, no, Your Honor. In Howard, it was undisputed and it was shown by the plea transcript that the defendant was under the influence of narcotics at the time. But the issue about whether he was entitled to an evidentiary hearing in Howard was not about whether he was taking narcotic painkillers because unfortunately lots of people take narcotic painkillers. The issue was whether he was so messed up by them that he couldn't understand what was going on during the plea colloquy. That was the point in dispute. And I think the only evidence in support of his position on that was his declaration, and that that required an evidentiary hearing. The court specifically referenced the plea transcript, the plea colloquy transcript, which demonstrated on its face that the defendant was at that time under the influence of narcotics. So that's why Howard is different. If it was just the defendant's self-serving word, I don't think Howard very well may have been decided differently, but the plea transcript served to corroborate the defendant's word. Other than that, there are no cases where it's merely the defendant's self-serving word that's sufficient to warrant an evidentiary hearing. But the statute, 2255B says, unless the motion and files and records in the case conclusively show that the prisoner is entitled to no release, the court shall grant a prompt hearing. So don't the words of the statute tell us that we need a hearing here? I still haven't figured out why you're saying... You're saying self-serving is not enough, but I don't see why that conclusively shows that it can't be true. Well, the district court made, in its discretion, the decision to not hold a hearing. It was keeping in mind the Turner case, which said and gives a hint as to what was required for the habeas petitioner to produce in order to establish his claim. It's different than, say, for instance, a civil complaint where it's notice pleading. This is not notice pleading. A habeas petitioner has to give actual fact to support his claim, and Turner said that his own self-serving word was not enough. And if he's telling the truth... I'm sorry, go ahead. I just want, for my benefit and the benefit of our audience, I just want to make sure we clarify what the conflict is here. The prisoner has come forward and said, I have this plea offer that my lawyer didn't tell me about, and I would have accepted it if I had known about it because it's more favorable than the others. That essentially is? That is correct. And then the lawyer, there's an affidavit that says I did tell him about it? The lawyer supplied an affidavit that says I did in fact tell my client about this plea offer, and it's important to note that the petitioner's claim dramatically changed from the beginning to the end. At the beginning of the case, he said that his attorney never mentioned the plea nor anything about any kind of plea, plea negotiations, or plea possibility before trial. That was his statement before. In his reply, he then admitted that his attorney approached him three times about the offer. Did the district court judge rely on that inconsistency? The district judge did not, but under the de novo review of whether the counsel was ineffective, this court can look at that. Doesn't the record indicate that there was a history here of plea offers that were rejected? That's correct. Reyes himself has admitted that he rejected three previous opportunities to plead, and he rejected them on each case. And he tried to fire this lawyer for other reasons. And he tried to fire him because he had hired him to do his job, which he admitted meant achieving an innocent verdict. Even post-verdict, he admitted that he was not, or he held steadfastly to his innocence. So if we were to conclude that that is an inconsistency, but it doesn't, particularly given that he was proceeding pro se, and you're supposed to construe pro se pleadings liberally, if we were to conclude, well, that's an inconsistency, but it's not enough to show that the record conclusively shows that he wasn't entitled to relief, what about my idea that I posed to your colleague about remanding to give the government a chance to submit additional documentary evidence, perhaps about the content of those other offers, that might refute what Reyes-Bosky said in reply? Yes, I think that would be the proper procedure. And I don't know if I can speak off the record in terms of what we could produce, but there would be evidence that we could produce that would directly contradict what Reyes-Bosky has said in his reply brief, because we never got a chance to rebut his assertion that somehow these other offers required him to testify against immigration agents. We could produce that evidence. I don't think the court needs to go there, because Reyes has only his own word, and I think the case law shows that that's not enough. There's no case that we could find that would demonstrate otherwise. Thank you. We'll give you one minute for rebuttal. Thank you. To start with that last point, I think that's a mistake to just order a remand to enlarge the record, because we're going to have the same kind of speech, and if the lower court is given the opportunity to take some declaration over another on a material fact... But that depends. I mean, the remand would be, if there's a conflict in the record, there has to be a hearing. But if the government's documentary evidence conclusively shows that he's lying, then basically it's up to the district court to figure out how to handle these proceedings, as long as it does so consistent with the requirements of the statute, which is there shall be a hearing unless the record conclusively shows... I understand the court's position, but we still are going to get back to the discussions where it was only Mr. Bosque and the attorney, and what was communicated at that time. The relief you want is what? A remand for an evidentiary hearing. To specify an evidentiary hearing. Correct. Is there evidence in the record about the mother or the brother knowing anything? Yeah, that was actually from Sadal's declaration that the government prepared, ER 68, where Sadal says, I even spoke to Mr. Rea's mother about a negotiated plea in the hopes that she would encourage... I couldn't tell, though, whether that was about this last plea that his claim is about. Do you know? Do you think that's clear? I think it's clear that it has to do with this plea offer that was not communicated to Mr. Rea's about the fact that it didn't require cooperation, unlike all the other... And that declaration is just as self-serving as Mr. Rea's Bosque. The attorney had quite an axe to grind. Okay, thank you. You're out of time. Thank you very much, counsel, for your arguments.
judges: Schroeder, Friedland, Chhabria